IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:19-cv-00532-M

JOSE RIOS,                          )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )                    ORDER
                                    )
CITY OF RALEIGH,                    )
                                    )
        Defendant.                  )

This matter comes before the court on the Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 [DE 39]. Defendant seeks an order dismissing Plaintiff's remaining claim for retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); Plaintiff counters that a jury must resolve existing issues of material fact. The undisputed evidence in this case demonstrates that Plaintiff's termination of employment was based on his insubordination and not in retaliation for his filing a charge of discrimination. Thus, for the following reasons, Defendant's motion is granted.

I.      **Background**

        A.      Procedural Background

On June 19, 2020, Plaintiff filed the operative Second Amended Complaint alleging that he suffered discrimination based on his national origin and retaliation when Defendant placed him on administrative duty, then suspended him, and eventually terminated his employment as a detective with the Raleigh Police Department. Defendant responded by filing a motion to dismiss the pleading arguing that Plaintiff failed to state plausible claims for relief. On September 18,

2020, this court granted the motion in part and permitted one claim for retaliation in violation of Title VII to proceed in this action: "that [Plaintiff] was terminated [on March 22, 2018] for filing EEOC Charge A [on January 31, 2018]." Ord., DE 32.

Following the discovery period, Defendant filed the present motion on April 1, 2021, contending that no genuine issues of material fact exist disputing that Plaintiff was actually terminated for insubordination (i.e., failing to cooperate with an internal investigation). Plaintiff counters that the evidence demonstrates a jury should be presented with the factual question whether he was terminated based on his refusal to cooperate or his protected activity of filing the EEOC charge.

      B.    <u>Findings of Fact</u>

Unless they cite to the record, the following findings of fact have been affirmatively undisputed. The court will not consider proffered "facts" supported solely by the operative pleading in this case. *See Atkins v. Glaser T*, 823 F. App'x 218, 219 (4th Cir. 2020) (". . . 'the nonmoving party [must] go beyond the pleadings' and rely on 'affidavits, ... depositions, answers to interrogatories, and admissions on file' to prove that a genuine issue of material fact exists.") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 408 (4th Cir. 2015) (citation and internal quotation marks omitted) ("To overcome a motion for summary judgment, however, the nonmoving party may not rely merely on allegations or denials in its own pleading but must set out specific facts showing a genuine issue for trial.").

1.    Plaintiff was hired by the Raleigh Police Department ("RPD") on October 2, 2000, after which he graduated from the Raleigh Police Academy in June or July 2001. Deposition of Jose Rios, January 25, 2021 ("Rios dep.") 8: 1-5, DE 43-24.

2.  In 2010, Plaintiff was promoted to detective; he was a "Senior Detective" at the time of his termination in April 2018. *Id.* 8: 19 – 9: 6.

3.  In 2017, Plaintiff's supervisor in the Juvenile Unit of the Detectives Division was Sergeant Robert LaTour. Declaration of Robert F. LaTour, March 27, 2021 ("LaTour decl."), ¶ 2, DE 43-12. In or about May 2017, Sergeant LaTour received a complaint from Child Protective Services ("CPS") officials regarding what they perceived to be "poor police service" by the Plaintiff with respect to the alleged lack of investigation of a February 6, 2017 case involving an eight-year-old victim. Sergeant LaTour reported the complaints to Plaintiff's supervisors in his direct chain of command.

4.  Under N.C. Gen. Stat. § 7B-307, the RPD is required to initiate a child abuse investigation within forty-eight hours of a referral from CPS.

5.  The CPS complaint was referred to RPD's Internal Affairs Unit ("IAU"), which opened Case No. I2017-009 and assigned the case to Sergeant Briget K. Stranahan. *See* Declaration of Briget K. Stranahan, March 29, 2021 ("Stranahan decl."), DE 43-23. Sergeant Stranahan was tasked with investigating complaints of Plaintiff's "poor police service and untruthfulness to his supervisors and in his investigative reports." *Id.* at ¶ 2.

6.  In connection with the IAU investigation, Plaintiff received the RPD complaint form for IAU Case No. I2017-009 containing the complaints against him.

7.  On June 13, 2017, Sergeant Stranahan interviewed Plaintiff about the February 6, 2017 child abuse case and the allegation that he had been untruthful.

8.  The following week, Sergeant Stranahan interviewed Plaintiff about submitting four late CPS-related reports.

9.  On August 7, 2017, at the direction of Chief Deputy Joseph Perry, Captain Todd Jordan

3

placed Plaintiff on administrative duty. Declaration of Todd Jordan, March 29, 2021 ("Jordan decl."), ¶ 11, DE 43-2.

10. Plaintiff testified that Sergeant Neville in IAU told him the order to place Plaintiff on administrative leave came from Major Karen Riggsbee. Rios dep. 66: 15 – 67: 11.

11. On August 31, 2017, Sergeant LaTour reported to Sergeant Stranahan that he found a license plate in Plaintiff's desk, which apparently was evidence Plaintiff obtained while investigating a 2013 case. Stranahan decl., ¶ 6.

12. On September 7, 2017, Sergeant Stranahan interviewed Plaintiff about the license plate. *Id.* at ¶ 7. After the interview, Plaintiff asked for the status of the I2017-009 investigation. *Id.* Sergeant Stranahan told Plaintiff that she had completed the investigation. *Id.*

13. Major Riggsbee supervised the internal affairs unit in 2017 and, in that capacity, "review[ed] and adjudicate[d] IAU cases." Declaration of Karen Riggsbee, March 29, 2021 ("Riggsbee decl."), ¶ 2.

14. On November 20, 2017, Major Riggsbee drafted her findings and recommendations in IAU Case No. I2017-009 and submitted them to "police attorney" Ashby Ray for review. *Id.* at ¶¶ 3, 4. Major Riggsbee attested that she "was considering a suspension with a six-month probationary period for improvement, and a demotion if [Plaintiff] did not improve for the poor service identified through November 20, 2017." *Id.* at ¶ 4; see also Findings & Recommendations, DE 43-3 at 5-10.

15. On January 30, 2018, Sergeant LaTour emailed Plaintiff asking for information about a December 2016 "active" case that was assigned to Plaintiff but did not appear to have any documentation concerning an investigation of the case. LaTour decl. ¶¶ 4, 5; Stranahan decl. ¶ 10; January 30, 2018 Email, DE 43-14.

4

16.     Plaintiff responded to Sergeant LaTour by email the same day "explaining in full detail what exactly had occurred with that case and that the case was actually at the D.A.'s office." Rios dep. 13: 3-14.

17.     Specifically, between 3:10 and 3:18 p.m. on January 30, 2018, Rios responded directly to LaTour saying, "If I am not mistaken, if it was not on my desk, then it may still be at the D.A.'s office. If I recall [t]he DA elected not to prosecute. [Officer] Moser supposedly did most of the follow up and was supposed to do a supplement." January 30, 2018 email, DE 43-8 at 22. Rios then forwarded to LaTour emails from January and February 2017 among himself, Officer Moser, and ADA Melanie Shekita concerning the status of the December 2016 case and reflecting information provided from the officer to the D.A. in answer to her questions. *See* Emails, DE 43-8 at 24-26. LaTour forwarded these emails to Sergeant Stranahan in IAU. *See id.*

18.     Plaintiff filed the charge of discrimination underlying this litigation with the Equal Employment Opportunity Commission ("EEOC") on January 31, 2018. Plaintiff testified that his charge serves as the "protected activity" on which he relies for his Title VII claim. Rios dep., 20: 14-19; 23: 15-23.

19.     At the time she received a "blind copy" of Sergeant LaTour's January 30, 2018 email to Plaintiff, Sergeant Stranahan perceived it as "relevant to issues of poor police service." Stranahan decl. at ¶ 10. At that time, Sergeant Stranahan was in the midst of investigating an "in-custody death" matter, which took precedence over "poor police service" matters. *Id.* at ¶ 11.

20.     Sometime in February 2018, Sergeant Stranahan consulted police attorney Ashby Ray, asking whether she should open a new case with respect to Sergeant LaTour's email or interview Plaintiff about the December 2016 case as part of the IAU I2017-009 investigation. *Id.* at ¶ 12. Apparently, case number I2017-009 was still under review with Mr. Ray at or about that time.

Riggsbee decl. at ¶ 5. Following that consultation, Stranahan arranged to interview Plaintiff as part of the I2017-009 investigation. Stranahan decl. at ¶ 12.

21.     Plaintiff attested that he "was called into Sergeant Stranahan's office in Internal Affairs, being questioned about the same case after I had already notified Sergeant Latour what was the issue about the case." Rios dep. 13: 15-19.

22.     On February 15, 2018, Mr. Ray returned the IAU I2017-009 file to Major Riggsbee with his recommendations. Riggsbee decl. at ¶ 6.

23.     Sergeant Stranahan held the interview with Plaintiff on February 20, 2018. She began by informing Plaintiff that she was investigating the December 2016 case mentioned in Sergeant LaTour's email as part of the I2017-009 investigation. *Id.* at ¶ 14; February 20, 2018 Interview Tr., DE 43-3 at 16.

24.     Sergeant Stranahan also advised Plaintiff that if he "refuse[d] to answer questions which directly relate to the performance of [his] official duties and/or conduct prejudicial to the good order and reputation of the Department, [he] may be subject to disciplinary action for insubordination, which could result in [his] dismissal from the Department." February 20, 2018 Interview Tr., DE 43-3 at 15.

25.     Following this advisement, Plaintiff expressed his refusal to answer any questions saying he had filed a charge with the EEOC and was "advised by [his] attorney not to answer or sign anything, moving forward at this point." *Id.* at 16-17.

26.     Plaintiff admits that the instruction to refuse to cooperate with the investigation into the December 2016 case did not come from the EEOC. Rios dep. 37: 16-18.

27.     RPD Policy DOI 1104-04 titled, Compliance with Regulations and Orders, was in effect at the time of the February 20, 2018 interview. Rios dep. 28: 11-21. The regulation states, in

6

pertinent part, "Employees are required to truthfully answer questions during administrative inquiries; refer to DOI 1105-02, Internal Affairs Complaints. It is a violation for any employee to deliberately make a false written or oral report, or refuse to give a truthful statement during an official inquiry which does not involve criminal charges against them. . . . Failure to truthfully answer questions may result in disciplinary action up to and including dismissal." *Id.* at 28: 22 – 29: 17; *see also* DE 14-6 at 4.

28.     On February 20, 2018, while Plaintiff was still in the office, Sergeant Stranahan and Captain Jordan notified Major Riggsbee that Plaintiff refused to answer questions "due to an EEOC Charge he had filed against the City and upon advice of his attorney." Riggsbee decl. at ¶ 7.

29.     Approximately twenty minutes after Plaintiff's interview with Sergeant Stranahan concluded, Captain Jordan commenced another interview with Plaintiff during which he repeated the advisement given by Sergeant Stranahan and advised Plaintiff of the additional requirement in RPD Policy DOI 1105-2 to answer questions directly relating to the employee's performance of their duties or to "prejudicial" conduct. February 20, 2018 Interview Tr., DE 43-3 at 19-20. Captain Jordan repeated that Plaintiff could be subject to discipline, including termination, for insubordination. *Id.* at 20-21. Plaintiff responded, "I understand, and I've read the DOI." *Id.* at 21; *see also* DOI 1105-2, DE 14-7 at 8.

30.     Plaintiff testified that he understood he was at risk and knew he could be terminated for his refusal to cooperate in the February 20 interview. *Id.* at 27: 12-18; 29: 18-24.

31.     Major Riggsbee attests that, prior to February 20, 2018, she did not know Plaintiff had filed a charge of discrimination with the EEOC and, at that time, did not know the contents of the charge or that the charge mentioned her and her husband. *Id.*

7

32.     Plaintiff testified that, at the time he spoke with an EEOC investigator after he was notified of the EEOC's receipt of his charge, the investigator informed him that the City had also received notice of his charge. Rios dep. 11: 14-19. However, he could not recall the "exact date" of the notification and had no knowledge of when anyone at RPD had knowledge of the charge. *Id.* at 12: 8-23; 14:22 – 15: 9.

33.     On February 23, 2018, Major Riggsbee drafted an addendum to her Findings and Recommendations in I2017-009, finding that Plaintiff was insubordinate during the February 20 interview when he refused to cooperate in the investigation. *Id.* at ¶ 9. She recommended termination of employment based on Plaintiff's insubordination, which she believed could "jeopardize[] organizational integrity and [ ] seriously impair organizational operations." *Id.* at ¶¶ 9-10.

34.     Major Riggsbee attests that, at the time she recommended termination, she did not know Plaintiff's EEOC charge mentioned her or her husband. *Id.* at ¶ 10. She states that she "did not consider the fact that Mr. Rios had filed an EEO Charge when [she] assessed the appropriate discipline for Mr. Rios' insubordination." *Id.*

35.     Major Riggsbee met with Plaintiff on March 13, 2018 to share her findings and recommendations regarding case no. I2017-009, to notify Plaintiff that she recommended termination for his insubordination on February 20, 2018, and to inform Plaintiff that a pretermination hearing was scheduled on March 20, 2018 at which he could submit any information to be considered before Major Riggsbee made her final decision. March 13, 2018 Tr., DE 43-7 at 32-50.

36.     On March 20, 2018, Major Riggsbee, Captain Jordan, and IAU Lieutenant Kyle Williams met with Plaintiff for a pre-termination hearing, at which Plaintiff had the opportunity to provide

8

information for the major's consideration before she made a final decision as to his termination. March 20, 2018 Tr., DE 43-7 at 28-31. Plaintiff read a statement expressing his belief that termination was "harsh and unjustified" and admitting he had violated RPD policy by refusing to cooperate with the IAU investigation. *Id.* Plaintiff added that he had decided not to speak based on advice from his attorney and that it would be beneficial to his EEO charge to refrain from speaking. *Id.*

37.     On March 22, 2018, Major Riggsbee served Plaintiff with a Notice of Termination, informing him that he would be terminated, effective April 7, 2018, for insubordination in violation of DOI 1104-04 and DOI 1105-02. *Id.* at ¶ 13. The major also advised Plaintiff of his right to appeal her decision to Deputy Chief Robert C. Council. *Id.*

38.     Major Riggsbee attests that, "[p]rior to and through March 22, 2018, [she] had no knowledge that Mr. Rios had made allegations in his Charge accusing [her] of engaging in discrimination and retaliation against him." *Id.* at ¶ 14.

39.     On April 2, 2018, Plaintiff met with Deputy Chief R.C. Council to appeal the termination decision; at this meeting, Plaintiff expressed his opinion that the IAU investigation was unfair, particularly because he was never counseled by his supervisor regarding the allegations against him. April 2, 2018 Tr., DE 43-7 at 97 through 43-8 at 9.

40.     On April 10, 2018, Plaintiff met with the Deputy Chief, who had reviewed the investigation and considered the termination, and explained to Plaintiff his belief that the allegations justified IAU's investigation and that Plaintiff's refusal to answer questions justified the termination. April 10, 2018 Tr., DE 43-8 at 10-16.

41.     Plaintiff believes that, by terminating his employment, Major Riggsbee retaliated against him for filing the January 31, 2018 EEOC charge. Rios dep. 32: 13-21; 36: 2-6; 49: 7 – 50: 5.

9

42. Plaintiff admits that his supervisor, Sergeant LaTour, was not involved in the decision to terminate him. *Id.* at 41: 20 – 42: 8.

43. Plaintiff testified that he has no evidence to show whether Major Riggsbee was aware of his EEO Charge prior to February 20, 2018. *Id.* at 37: 5-8.

44. Plaintiff testified that his insubordination was the only reason he was given for his termination. *Id.* at 38: 20-25.

45. Plaintiff testified that "if RPD terminates someone for refusing to cooperate with an I.A. investigation, it takes that action within its own policy." *Id.* at 39: 6-9.

## II.  Legal Standards

If "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" the court shall grant summary judgment. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party, and "[a] fact is material if it might affect the outcome" of the litigation. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotations and citations omitted). The court's role at the summary-judgment stage is not "to weigh the evidence and determine the truth of the matter" but instead "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Accordingly, the court must "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

When the nonmovant bears the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

10

(1986). If the moving party carries this initial burden, the burden then shifts to the nonmoving party to point out "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting the Federal Rules of Civil Procedure). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see Celotex*, 477 U.S. at 324. While "it is the province of the jury to resolve conflicting inferences from circumstantial evidence[,] [p]ermissible inferences must still be within the range of reasonable probability." *Ford Motor Co. v. McDavid*, 259 F.2d 261, 266 (4th Cir.), *cert. denied*, 358 U.S. 908 (1958). It is "the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Id.*

## III.     Analysis

"Title VII prohibits an employer from retaliating against a worker for either participating in a Title VII proceeding or opposing an employer's discriminatory practices." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019) (quoting *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 255 (4th Cir. 1998)). In lieu of direct evidence of retaliation, a plaintiff may prove his claim using "indirect" evidence by following the *McDonnell-Douglas* burden-shifting framework. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021). To establish a prima facie claim of retaliation, a plaintiff must show: (1) he engaged in protected activity, (2) the employer took a materially adverse action against him, and (3) there is a causal connection between the protected activity and the adverse action. *Perkins*, 936 F.3d at 213 (citing *Burlington N. &*

11

*Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61–68 (2006)).

Defendant does not dispute, and the court finds, that the evidence in this case establishes a prima facie case. Plaintiff engaged in protected activity by filing a charge of discrimination with the EEOC (see *Jefferies v. UNC Reg'l Physicians Pediatrics*, 320 F. Supp. 3d 757, 761 (M.D.N.C. 2018)), he suffered a materially adverse action when he was terminated (*see Strothers v. City of Laurel*, 895 F.3d 317, 328 (4th Cir. 2018)), and Riggsbee recommended termination three days after learning of Plaintiff's EEOC charge and Plaintiff was notified of his termination just over a month after Riggsbee learned of the charge (*see id.* at 336-37 (". . . temporal proximity is sufficient to establish a causal connection at the prima facie stage.")).

Once a prima facie case is established, the "burden then shifts to the [employer] to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). Here, Defendant proffers the Plaintiff's "insubordination" in refusing to cooperate in an administrative investigation in violation of department policies as its legitimate, non-retaliatory reason for his termination. The evidence presented demonstrates that Plaintiff knew about the policies, knew he was at risk of discipline, including termination, for violation of the policies, and knew that his refusal to answer questions at the February 20 interview could be deemed insubordination that could lead to his termination. The court finds the Defendant has met its burden.

If the employer meets its burden, "the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons 'were not its true reasons but were a pretext for [retaliation].'" *Id.* at 250 (citation omitted). To demonstrate pretext, a plaintiff may show that an employer's proffered nondiscriminatory reasons for the termination are inconsistent over time, false, or based on mistakes of fact. *Haynes v. Waste*

12

*Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019) (citing *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001)). That is, Plaintiff can "attempt to establish that [he] was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 646 (4th Cir. 2002) (citation omitted). Summary judgment is proper if the plaintiff fails to put forth evidence that the defendant's proffered explanation is pretextual. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 217-18 (4th Cir. 2007). In this case, Plaintiff makes three arguments in an attempt to show pretext: (1) Defendant violated the same policy it claims Plaintiff violated; (2) by refusing to cooperate in the investigation, Plaintiff engaged in protected oppositional activity; and (3) Plaintiff was justified in refusing to participate in the administrative investigation because attempts to participate would have been futile.

A.    Defendant's Violation of Department Policy

Plaintiff asserts that, although he violated department policy DOI 1105-02 by refusing to answer questions during the investigation, Defendant violated the same policy by unnecessarily prolonging the investigation. Defendant does not dispute DOI 1105-02 states that administrative investigations should be completed within thirty days, any extensions must be approved, and the I2017-009 investigation commenced in May 2017 and completed in March 2018. Rather, Defendant asserts that Plaintiff fails to demonstrate how any violation by RPD officials, other than Major Riggsbee, of these policies is relevant to whether Major Riggsbee's decision to terminate Plaintiff in retaliation for filing an EEOC charge is pretextual. The court agrees. Plaintiff admits that the decision to terminate him was solely Major Riggsbee's; thus, policy violations by any other official(s) are irrelevant unless Plaintiff can demonstrate Major Riggsbee's involvement in

13

the violation.[1]

To the extent that Plaintiff contends Major Riggsbee prolonged the investigation in violation of the relevant policies, he has submitted no evidence demonstrating a material factual dispute. DOI 1105-02, which governs Internal Affairs investigations, provides that IAU "investigations should be completed within (30) days of the date the complaint was filed." DE 14-7 at 9. Plaintiff claims that Sergeant Stranahan told him following a September 7, 2017 interview that she had completed her investigation. Nothing in the record demonstrates that Major Riggsbee[2] engaged in any conduct that lengthened the investigation period between May and September 2017. DOI 1105-02 also provides that "[c]ompleted investigations will be forwarded from the Internal Affairs Captain to the Major of Professional Standards . . . [who will] issue a general finding on each of the allegations . . . ." DE 14-7 at 9. Nothing in that policy places a time limit on the major's issuance of his or her findings. In this case, the evidence shows that Major Riggsbee completed her Findings and Recommendations on November 17, 2017 and submitted them to the police attorney for review. To the extent that Plaintiff points to the "reopening" of the investigation in February 2018, the evidence reflects that Sergeant Stranahan asked the police attorney whether

---

[1] Notably, Plaintiff cites to the depositions of LaTour and Stranahan in his brief (Resp. at 10-12); however, while Plaintiff listed these depositions in his "Index to Appendix" (DE 47), copies of the depositions are not found in the record. Nevertheless, the court finds its analysis is not affected by the absence of this evidence.

[2] When asked during his deposition what information his listed witnesses possessed concerning his retaliation claim, the Plaintiff testified that "Karen Riggsbee got involved because of my issues I had with her husband." Rios dep. 42: 24 – 43: 25. While the court might speculate based on the operative pleading as to which "issues" the Plaintiff references, he points to no evidence identifying these issues or how they may raise a genuine issue of material fact as to whether Major Riggsbee terminated him for filing the EEOC charge. *Dash*, 731 F.3d at 311 ("the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence"). The evidence before the court demonstrates that Major Riggsbee "got involved" in the investigation leading to Plaintiff's termination because she was the officer tasked with supervising IAU investigations and making findings and conclusions as to each investigation.

14

she should interview Plaintiff in case number I2017-009 or whether she should open a new case. Nothing in the record shows that Major Riggsbee was consulted about this question.

Accordingly, the court concludes no reasonable juror could find on this record that Major Riggsbee's decision to terminate Plaintiff was a pretext for retaliation based on any violation of DOI 1105-02.

## B. Participation in Investigation Would Have Been Futile

Further, Plaintiff argues that the "futile gesture" doctrine applies to justify his refusal to answer questions for the I2017-009 investigation and, thus, insubordination was not a legitimate reason for his termination. Plaintiff's cited Fourth Circuit opinion describes the doctrine as follows: "the failure to apply for a job does not preclude recovery if a claimant can demonstrate that he would have applied but for accurate knowledge of an employer's discrimination and that he would have been discriminatorily rejected had he actually applied." *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1451 (4th Cir. 1990). The court in *Pinchback* applied the doctrine, typically applied in employment discrimination cases, to a housing discrimination case finding that, to recover on her claim, the plaintiff was not required to submit an offer to purchase a property lease having been reliably informed that the builder refused to sell leases to Black individuals. *Id.* at 1452.

Plaintiff argues the doctrine applies to his circumstances asserting that, because he was reliably informed and, thus, reasonably believed that the I2017-009 investigation was completed in September 2017, it would have been futile for him to further participate in the investigation and, thus, he was justified in refusing to answer the questions. The court is not convinced.

First, as demonstrated by the Plaintiff's cited cases, the doctrine applies to permit plaintiffs who are otherwise required to meet certain elements of a claim—i.e., demonstrating he or she

15

applied for a job or promotion—to recover for unlawful discrimination when they can show that engaging in the required conduct would be futile. Here, Plaintiff attempts to apply the doctrine to conduct required to keep his employment, rather than to meet an element of a claim of discrimination. Plaintiff cites, and the court has found, no cases supporting such application. For it to apply in this context, Plaintiff would have to bring forward evidence suggesting that he had been reliably informed that his termination was a foregone conclusion.

To the extent that Plaintiff so contends, he fails to proffer any evidence supporting such contention. *See Powell v. Biscuitville, Inc.*, 858 F. App'x 631, 633 (4th Cir. 2021) ("in determining whether [plaintiff] engaged in the misconduct, '[i]t is the perception of the decision maker which is relevant.'" (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996) (noting that "unsubstantiated allegations and bald assertions" fail to show pretext)). Nothing in the record shows that Major Riggsbee considered terminating Plaintiff's employment before the February 20 interview and, in fact, if there were such evidence, it might serve to discount Plaintiff's contention that he was terminated in retaliation for filing the EEOC charge on January 31, 2018.

Second, Plaintiff does not demonstrate that answering the IAU's questions about the open 2016 case would have been futile. Plaintiff claims that he reasonably believed the I2017-009 investigation was completed when Sergeant Stranahan informed him of that fact in September 2017. Even if true, however, Sergeant Stranahan called him in February 2018 to discuss additional information she received in late January 2018 concerning the same or similar type of "poor police service." Plaintiff fails to explain how his answers to questions concerning this conduct would be futile.

The court concludes that Plaintiff fails to point to evidence raising a material factual dispute as to whether his answers to questions about his job performance in February 2018 would have

been futile in an attempt to demonstrate his refusal to answer was not insubordinate.

C.      Plaintiff's Refusal to Answer Questions was Protected Oppositional Activity

Plaintiff also argues that he was not actually insubordinate when he refused to answer questions because he had participated in the investigation up to that point and his refusal "was equivalent to mounting a protest and engaging in oppositional activity." The court is not persuaded that Plaintiff has raised a genuine issue of material fact in this regard.

Plaintiff admitted on February 20, 2018 that he understood he could be found "insubordinate" for his refusal to answer questions and that such finding could lead to termination. *See* February 20, 2018 transcript, DE 43-3 at 20-21. In fact, until argued in his response brief, Plaintiff's belief that he engaged in protected oppositional activity when he refused to answer questions has never been expressed. *See* Rios dep. 20: 9 – 21: 13; *see also* March 26, 2018 EEOC Charge of Discrimination, DE 14-19. In his brief, Plaintiff fails to identify what conduct by the Defendant he was opposing by refusing to answer questions about his work on an open 2016 child abuse case. To the extent he contends he was opposing the Defendant's continuation of the investigation purportedly in violation of its department policy, Plaintiff fails to articulate how such opposition is protected.

In the event that Plaintiff argues the investigation itself was discriminatory and he was opposing the investigation by refusing to answer questions, Plaintiff's cited Fourth Circuit opinion, *Laughlin*, *supra*, provides that, "[t]o determine whether an employee has engaged in legitimate opposition activity we . . . 'balance the purpose of the Act to protect persons engaging reasonably in activities opposing ... discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel.'" 149 F.3d at 259 (quoting *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981)). The evidence in this case

reflects Major Riggsbee's testimony that she considered Plaintiff's "refusal to cooperate to be an extremely serious matter. For RPD to function effectively, officers must cooperate with internal RPD investigations. Insubordination like that demonstrated by Mr. Rios jeopardizes organizational integrity and can seriously impair organizational operations." Riggsbee decl. at ¶ 9. In addition, DOI 1105-02 provides:

> The Internal Affairs function within the Raleigh Police Department is important for the maintenance of professional police conduct and ensuring the overall integrity of the Department. This function is accomplished by investigating alleged violations of misconduct by Raleigh Police Department employees. The purpose of this policy is to establish procedures for the fair and impartial investigation of complaints, processing complaint investigations, and final disposition of received complaints.

DE 14-7 at 2. Plaintiff points to no evidence supporting his belief that his refusal to answer was reasonable opposition to discrimination. *See Holland*, 487 F.3d at 216 ("It takes two sides to create a conflict."). Rather, he argues that "[h]aving been misled by the RPD internal investigations, [his] reasonable belief [was] that he was being targeted to oust him from the department due to his national origin, EEOC complaints [sic], and outspokenness on discriminatory inter-departmental conduct." Resp. at 16-17. Plaintiff fails to explain what he means by "misled," but the court infers from the context of the argument that he refers to being "repeatedly told" the investigation was concluded.

The court finds Plaintiff fails to link statements that the investigation had concluded to being "targeted" for termination and, thus, on balance the court concludes that Defendant's strong interest in maintaining professional police conduct and ensuring the overall integrity of the police department outweighs Plaintiff's interest in opposing what he perceived to be a discriminatory investigation. *See Laughlin*, 149 F.3d at 260; *see also Kitlinski v. United States Dep't of Just.*, 994 F.3d 224, 231 (4th Cir. 2021) ("Even assuming that *Armstrong* applies here, we have little

18

difficulty concluding that the [defendant's] interest in ensuring its employees' full participation in internal investigations outweighs any interest [plaintiff] had in promoting USERRA's nondiscriminatory purpose."). The court concludes Plaintiff has failed to point to evidence raising a genuine issue of material fact as to whether his refusal to answer was protected activity rather than insubordination and, thus, insufficient to justify Major Riggsbee's decision to terminate his employment, which may support an inference of pretext.[3]

## IV. Conclusion

In sum, while the evidence presented by the parties demonstrates that Plaintiff meets his burden to establish a prima facie case of retaliation in violation of Title VII, based primarily on temporal proximity between his protected conduct and termination of employment, he fails to produce evidence demonstrating genuine issues of material fact as to whether Defendant's legitimate reason for terminating his employment was actually a pretext for retaliation. *See Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (citing *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001)) ("While temporal proximity between a complaint and an adverse employment action can, in some cases, be used to survive summary judgment, it does not suffice here.").

The evidence currently before the court reflects that Major Riggsbee began the process of disciplining Plaintiff well before he filed his EEOC charge on January 31, 2018 (i.e., Plaintiff testified he was told that Major Riggsbee made the decision to place him on administrative duty

---

[3] Although Plaintiff's testimony concerning his response to Sergeant LaTour's January 30, 2018 email, which led to the February 20, 2018 interview, may be liberally construed as an argument that the interview itself was unnecessary and, therefore, any action taken on the basis of the interview may be interpreted as retaliatory, the court finds that Plaintiff has produced no evidence raising a material factual question as to whether Major Riggsbee, or anyone at RPD, had notice *before* the interview of his EEOC charge of discrimination.

19

in August 2017); in her November 20, 2017 findings and recommendations regarding I2017-009, Major Riggsbee recommended that RPD impose on Plaintiff a written reprimand, three-day suspension without pay, a transfer within the Detective Division, and a Performance Improvement Plan; Major Riggsbee submitted her findings for review by the police attorney and he returned them to her on February 15, 2018; Sergeant LaTour emailed Plaintiff on January 30, 2018 requesting information regarding an "open" 2016 child abuse case, and Plaintiff responded by email the same day with information about the case; LaTour forwarded Plaintiff's emails to Sergeant Stranahan, who followed the police attorney's instruction to interview Plaintiff regarding the 2016 case as part of the investigation Stranahan had completed in September 2017; Sergeant Stranahan arranged to interview Plaintiff on February 20, 2018; after the sergeant advised Plaintiff at the interview of the requirement to participate in administrative investigations and the consequences for failing or refusing to do so, Plaintiff told Sergeant Stranahan that he had filed an EEOC charge and refused to answer any questions; while Plaintiff was still in the office, Sergeant Stranahan and Captain Jordan informed Major Riggsbee that Plaintiff filed the EEOC charge and refused to answer questions; twenty minutes after the first interview concluded, Captain Jordan went on the record with Plaintiff in a second attempt to interview him by advising him again of the department's policies requiring participation and warning him that, by refusing to answer questions, he may face termination for insubordination, but Plaintiff repeated that he had filed the EEOC charge and, on his attorney's advice, refused to answer questions; Major Riggsbee did not know before February 20, 2018 that Plaintiff filed an EEOC charge; on February 23, 2018, Major Riggsbee recommended Plaintiff's termination of employment; Major Riggsbee met with Plaintiff on March 13, 2018 to share her findings and recommendations regarding case no. I2017-009, to notify Plaintiff that she recommended termination for his insubordination on February 20, 2018,

20

and to inform Plaintiff that a pretermination hearing was scheduled on March 20, 2018 at which

he could submit any information to be considered before Major Riggsbee made her final decision;

on March 20, 2018, Plaintiff attended the pretermination hearing with Major Riggsbee at which

Plaintiff read a statement expressing his opinion that termination was "harsh" and his decision not

to speak was "beneficial" for both himself and the department; on March 22, 2018, Major Riggsbee

notified Plaintiff of his termination of employment effective April 7, 2018, and the opportunity to

appeal her decision to the deputy chief; on April 2, 2018, Plaintiff met with Deputy Chief R.C.

Council to appeal the termination decision, at which time Plaintiff expressed his opinion that the

IAU investigation was unfair, particularly because he was never counseled by his supervisor

regarding the allegations against him; on April 10, 2018, Plaintiff met with the Deputy Chief, who

reviewed the investigation and considered the termination, and explained to Plaintiff his belief that

the allegations justified IAU's investigation and that Plaintiff's refusal to answer questions

justified the termination.

The court concludes that, on this record, no reasonable juror could find that Defendant's

reason for terminating the Plaintiff was a pretext for retaliation in violation of Title VII, particularly

given that Plaintiff was offered several opportunities to rectify his conduct. He has produced no

evidence rebutting the facts set forth above or questioning whether he actually violated department

policy or whether Major Riggsbee truly believed he was insubordinate. *See Holland*, 487 F.3d at

217 (in assessing pretext, "it is the perception of the decisionmaker which is relevant") (citing

*Azimi v. Jordan's Meats, Inc.*, 456 F.3d 228, 246 (1st Cir. 2006)). Therefore, Defendant's Motion

Case 5:19-cv-00532-M   Document 58   Filed 11/04/21   Page 21 of 22

for Summary Judgment is GRANTED. The Clerk of the Court is directed to close this case.

SO ORDERED this _4th_ day of November, 2021.

Richard E Myers II

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE